SIMS v. SIMS.   (No. 528.)

Court of Civil Appeals of Texas. Waco. June 2, 1927.

Rehearing Denied June 30, 1927.

I. New trial ⬅️56—Where it is reasonably doubtful whether jury's improper conduct affected verdict, same should be set aside and new trial granted (Rev. St. 1925, art. 2234).

It is not incumbent upon a party complaining of misconduct of jury to show beyond question that such conduct affected judgment, but, if upon entire record it is reasonably doubtful whether improper conduct affected verdict, same should be set aside and new trial granted under Rev. St. 1925, art. 2234.

2. New trial ⬅️44(3)—Plaintiff held entitled to new trial because of "misconduct of jury," where juror made statements in nature of original evidence (Rev. St. 1925, art. 2234).

In suit in which mental capacity of defendant at time of executing instruments was in issue, and physician had testified that defendant had pellagra, where after first ballot, juror made statements to jury regarding pellagra which were in nature of original evidence, and it was doubtful whether improper conduct affected verdict, plaintiff should be granted new trial because of "misconduct of jury," under Rev. St. 1925, art. 2234.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Misconduct.]

Appeal from District Court, Ellis County; W. L. Harding, Judge.

Divorce suit by Mary L. Sims against J. S. Sims, in which the defendant filed a cross-action. Plaintiff took a nonsuit as to the suit for divorce, and, from the judgment for defendant on the cross-action, plaintiff appeals. Reversed and remanded.

Looney & Stout, of Ennis, for appellant.
E. I. Key, of Denton, and J. L. Zumwalt, of Dallas, for appellee.

BARCUS, J.   Appellant instituted this suit against appellee for a divorce. Appellee answered the divorce petition by various defenses not necessary to mention, and by cross-action alleged that, while he was of unsound mind, appellant had induced him to execute to her a warranty deed to his property and to execute a permanent separation agreement, and he asked that each of said instruments be canceled. The cause was tried to a jury and at the conclusion of the testimony appellant took a nonsuit as to her suit for divorce, and the cause was submitted to the jury on the sole issue as to whether appellee, at the time he executed the deed and separation agreement, had sufficient mental capacity to execute same, which the jury answered in the negative. Based on said answer, the trial court entered judgment canceling the deed and separation agreement.

Appellant contends that the judgment of the trial court should be set aside because of the misconduct of the jury. We sustain this assignment. It appears that appellee, who was about 75 years of age, had been sick for several months with a disease known as pellagra, and that shortly after he was able to get out of his bed he executed the instruments in controversy. The physician who attended him during all of his illness testified that Mr. Sims had pellagra, and that it was a disease which affected one's mind, and

would cause, in many instances, insanity. The question as to whether Mr. Sims at the time he executed the instruments had sufficient mentality to understand the nature and effect of his acts was very sharply controverted, and, as above stated, was the sole issue submitted to the jury. After the jury retired to consider their verdict, the first ballot showed seven jurors voted for appellee Sims, one voted for appellant, and three were undecided and did not vote. Thereafter the juror Carroll stated to the jury that he knew something about how pellagra affected one's mind; that he was thoroughly familiar with people who were suffering with pellagra; that his wife had it, and that from his personal observation of it he knew such disease left a man's or woman's mind affected to the extent that they were incapacitated for over half their time, and he would say that they really would not know what they were doing and that they were not capable of transacting any kind of business whatever; that Dr. Hastings had advised him to leave some one with his wife to watch her when he was away, as it was dangerous to leave her by herself. In the same connection the record shows that the juror Currie stated that he remembered a case of pellagra out at Ovilla, and made the comment that it affected a person's mind and rendered him incompetent to transact any kind of business. The trial court heard evidence with reference to the misconduct of the jury, and it was shown that the above statements were made by the jurors in the jury room while they were considering their verdict, and the juror Jennings testified that he could not say that the remarks of Currie and Carroll in the jury room did not influence him. He stated: "I couldn't say they did directly (affect me); they might have in a subconscious way." The juror Mulkey testified that he considered the remarks made by the juror Carroll to some extent; that he did not think the juror would misrepresent things; that he had confidence in him as a man, and believed that he was telling the truth; that he did not know that it had any bearing in arriving at his verdict. The statements of the jurors were in the nature of original evidence, not sworn to, and highly improper.

[1, 2] Under article 2234 of the Revised Statutes, the trial court is authorized to hear evidence when motion is made for a new trial on account of misconduct of the jury, "and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material," and the trial court's action in refusing a new trial by reason of the misconduct of the jury is reviewable by the appellate courts. It seems to be the well-settled principle of law that, if upon the entire record it is reasonably doubtful whether the improper conduct of the jury affected the verdict, same should be set aside

and a new trial granted. Moore v. Ivey (Tex. Com. App.) 277 S. W. 106; Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104. In this case two of the jurors testified that they themselves were in doubt as to whether the testimony given to the jury by members of the jury panel in its retirement had any effect on their verdict. It cannot therefore be said that the result of the verdict is entirely free of reasonable doubt that the improper conduct did not affect same. It is not incumbent upon a party complaining of the misconduct of the jury to show beyond question that such misconduct did affect the judgment, but, as above stated, the rule is that, if upon the entire record it is reasonably doubtful whether the improper conduct of the jury affected the verdict, same should be set aside. We are of the opinion that the trial court was in error in not granting a new trial because of the misconduct of the jury.

The other questions raised in appellant's brief relate to argument of counsel and such matters as will not likely arise on another trial.

For the error indicated, the judgment of the trial court is reversed, and the cause remanded.