## PANTAZIS v. DALLAS RY. & TERMINAL CO.

No. 13197.

Court of Civil Appeals of Texas. Dallas.

April 17, 1942.

Rehearing Denied June 5, 1942.

Leake, Henry, Young & Golden and J. Manuel Hoppenstein, all of Dallas, for appellant.

Burford, Ryburn, Hincks & Charlton and Frank M. Ryburn, Jr., all of Dallas, for appellee.

### LOONEY, Justice.

Appellant sued appellee to recover damages for alleged personal injuries received while a passenger on one of appellee's street cars. Judgment was rendered for appellee on the verdict of a jury, from which this appeal was prosecuted. The assignments relied upon for reversal relate exclusively to the alleged misconduct of the trial judge. It seems that, at first, the jury returned into court a verdict finding appellee guilty of actionable negligence in several respects, acquitted appellant of contributory negligence, but found that the injury complained of resulted from an unavoidable accident. Discovering the irreconcilable conflict in the answers, the court retired the jury to give the case further consideration. (What the court said to the jury at this juncture, noticed later, furnishes the grounds for the assignment of error.) After reconsidering the case, the jury returned into court a verdict that acquitted appellee of all charges of negligence; also found that the injury was not the result of an unavoidable accident. Discovering for the first time that, the jury had not answered Issue No. 26, on the subject of new and independent cause, the court again retired the jury, with instructions to answer the unanswered issue, and, in due time, the jury returned with an answer to the effect that, appellant's injury resulted from a new and independent cause. These instructions were given orally, and in the absence of appellant's counsel, although appellant was present. No effort was made to secure the presence of appellant's counsel until the jury came in the last time, when the court had the bailiff make a search for Mr. Golden, appellant's counsel, and appellant also made an attempt to find him; but failing, the court had the jury polled, each juror concurring in the verdict, therefore judgment was rendered for the appellee, and, appellant's motion for the declaration of a mistrial and for a new trial being overruled, he excepted, gave notice of, and perfected this appeal.

Appellant contends that the court erred in verbally instructing the jury in the absence of his counsel, and that the instructions given, in effect, informed the jury that their answers were wrong, thus coercing or causing the jury to change their findings and return the verdict later presented to the court.

The contention that the court informed the jury that their answers were wrong presents an issue of fact to be determined from the evidence. Two of the jurors testified: One, Mr. Witt, testified that, when the verdict was first returned, the judge said the answers were wrong; but his testimony is conflicting within itself; at places, he testified that the court said the answers were wrong; at another place, he said he couldn't remember the exact words of the judge, but that "We (the jurors) understood they (the answers) were wrong."; again, this witness was asked if the judge did not say there was a conflict between certain issues, naming them, and the witness answered "Yes, sir," but later said he understood the judge to say the answers were wrong; and being finally asked if the judge did not say he could not tell the jury how to answer the issues, but there was a conflict and he couldn't render judgment on that verdict, the juror answered, "That is what he said." Obviously, the testimony of this juror is so conflicting and contradictory within itself that, standing alone, it is an unreliable guide; that is, whether he said the answers were wrong, or merely conflicting. This is said without intending any reflection

whatever upon the juror, because, as a layman, he was not supposed to realize the significance of these terms and their implications in the connection used, as would a lawyer. Obviously, he understood something was wrong with the verdict—that was absolutely true—and could honestly have assumed that the court characterized the answers as wrong.

■ With reference to the probative value of the testimony of a witness, conflicting within itself, the Supreme Court, in Easton v. Dudley, 78 Tex. 236, 240, 14 S.W. 583, 585, said: "The evidence is no guide to the truth. Had the contradictory statements been made by two witnesses, one contradicting the other, the rule that there exists evidence to support the finding of the court would apply, but these statements are made by the same witness, which make his testimony at least of little value,—not enough to justify a reliable conclusion."

However, the foreman of the jury, Mr. Black, testified that when the verdict was returned, the judge read it over and announced that, in view of the answers, he couldn't make a ruling; that he considered the issues conflicting. Judge Nash offered himself as a witness and testified that, when the jury came in, discovering the conflicting answers, he announced that no judgment could be rendered on the verdict, mentioned, by number, the conflicting issues, stated that he could not tell them how to resolve the conflict, as they were the sole judges of the testimony, the credibility of the witnesses, and the weight to be given their testimony; therefore, they should find the conflict for themselves and resolve it, if they could.

■ In view of this testimony, we are of opinion that the judge did not commit the egregious blunder of telling the jury their answers were wrong, but, calling their attention to the fact that answers to certain numbered issues were conflicting, retired them to reconsider the case, with the result as heretofore stated.

Is there anything in the record that would justify the conclusion that the conduct of the court coerced the jury into agreeing upon and returning into court the final verdict?

■ As to whether or not, after retiring to reconsider the case, the jury arbitrarily changed their former findings, or made new findings after considering the question anew, the testimony will reveal. Witt and Black both testified that they reconsidered the case in the light of the conflict, to which their attention had been called, and the evidence, and agreed upon the findings subsequently returned. We discover no evidence here of coercion, but a reversal of findings after due and orderly consideration.

■ As before stated, it seems that appellant was present during the occurrences under consideration, but neither of his attorneys was present; one had left the state and the other, Mr. Golden, was somewhere in the court house, but was in and out of the court room. Under these circumstances, we do not think the trial court erred in verbally instructing the jury as heretofore stated. 41 T.J., p. 997, Sec. 205. Where a jury reports that they are unable to agree, it is not error for the court, in the absence of counsel, to orally instruct the jury that they should answer such of the issues as they could agree upon (See Varn v. Gonzales, Tex.Civ.App., 193 S.W. 1132, 1136); and in Kuykendall v. Johnson Funeral Parlor, Tex.Civ.App., 38 S.W.2d 601, where the jury came into open court and asked whether or not there was an ordinance regulating the speed of ambulances, it was held not error for the court, in the absence of counsel, to reread the issue on the subject of speed, also the definition of negligence.

■■ Touching the proper conduct of a trial judge, in a situation such as was presented to the judge below, the Commission of Appeals (opinion approved by the Supreme Court), in St. Louis, S. F. & T. Ry. Co. v. Kaylor, 291 S.W. 216, 218, said: "Trial courts should, in a preliminary way, read proposed answers being returned by juries to special issues. If a conflict is discovered by the court, he should state to the jury that the answers are conflicting and, in their present status, would not warrant an entry of any judgment in the case. With that information, the jury should be retired for further consideration of the issues and their answers thereto. But the court should not indicate to the jury, or permit counsel to do so, that it would be to the interest of one of the parties to have a certain issue answered in a certain way." In Dallas Railway & Terminal Co. v. Horton, 119 S.W.2d 122, 126, this Court held that, where the jury returned conflicting answers, it was proper for the

court to orally call the jury's attention to the conflict and retire them for further deliberation; that such procedure did not constitute instructions required to be in writing, within the meaning of the statute; and in Traders & General Ins. Co. v. Boyd, 146 S.W.2d 488, 492, we quoted from Speer on Special Issues, p. 533, Sec. 401, who, after quoting Art. 2207, R.C.S., said as follows: "If the verdict is informal or defective, the court may direct it to be reformed at the bar. If not responsive to the issue submitted, the court shall call their attention thereto and send them back for further deliberation.", said: "Under the statute just quoted, if it should appear that there were conflicting findings in the answers, it would be the duty of the court to send the jury back for further deliberations to the end that such conflict be eliminated. This, however, is itself a species of defect within the statute. The action of the court in directing the reformation of an informal or defective verdict, or the return of the jury for further deliberation, where the same is not responsive to the issue submitted, is not apparently required to be in writing, for neither of these is the giving of an additional instruction within the statute requiring the charge to be in writing. Clearly the implication of the statute is that it may be oral. Precisely as the return of the jury for continued deliberations, where they have been unable to agree, may be oral." See also the recent case of Traders & Gen'l Ins. Co. v. Carlile, Tex.Com.App., 161 S.W.2d 484. It seems that, after the jury came in the first time and had been retired by the judge to consider the case further, Mr. Golden, counsel for appellant, appeared and made inquiry in regard to the status of things, and was told by the court that the jury was trying to give him $450, but, there being a conflict in their findings, they had been retired to resolve the conflict. Mr. Golden made no further inquiry in regard to the instructions the court had given the jury, and urged no objection at that time to the procedure pursued.

■ Voluntary absence of counsel does not preclude the court from receiving and answering the jury's request for additional instructions; the right of counsel to be present is for his benefit and is waived by voluntary absence. See Texas & N. O. Ry. Co. v. Martin, Tex.Civ.App., 32 S.W.2d 363, writ refused.

■ However, appellant seems to insist that, somehow, coercion must have existed to induce the jury to change their findings. After a lengthy review of the facts, we fail to find evidence of misconduct on the part of the trial judge, or that the changed findings made by the jury were coerced, or reasonably could have been coerced by anything the judge did or said. This is a typical case where the findings of the jury were conflicting, and the judge, calling attention to the conflict, retired the jury to reconsider the case and resolve the conflict, without comment upon the evidence, or any character of dictation as to how the conflict should be eliminated. The testimony of the two jurors shows that, after retiring, the jury reviewed the whole case before making any changes in their findings, and after being retired the second time to answer an unanswered issue, for the first time returned an entirely consistent verdict, upon which the judgment was based. However, these jurors gave testimony to the effect that they would not have answered as they did if the court had not instructed them verbally; or because of the way he did instruct them; or would not have changed their answers if the court had not said they were conflicting; or would not have agreed to the changes if it had not been for the court's charge, etc. Such testimony, in our opinion, proved nothing. Of course there would have been no occasion to reconsider the case, or change answers if the court had not retired the jury for the purpose of eliminating the conflict; but, we do not think jurors should be permitted to give post-trial testimony in regard to their mental processes, in arriving at a verdict; such procedure, in our opinion, would render judgments insecure and tend to demoralize the administration of justice.

So, in harmony with the views heretofore expressed, appellant's assignments are overruled and the judgment of the court below is affirmed.

Affirmed.