**GREAT WESTERN INV. CO. v. SCOTT.**

No. 12447.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 1, 1952.

Rehearing Denied Nov. 26, 1952.

———◇———

Leonard Brown, San Antonio, for appellant.

Stahl & Sohn, San Antonio, for appellee.

NORVELL, Justice.

This is an action brought by S. E. Scott against Great Western Investment Company, a partnership composed of E. M. Stevens and R. O. Kipp, and Great Western Investment Company, a corporation. Scott sought damages for physical pain, mental suffering, fright, humiliation, embarrassment and injury to his reputation occasioned by being unjustly arrested for the supposed theft of an automobile. He was awarded a recovery of $2,500 against the corporation.

Appellant presents three main contentions for a reversal of the judgment. First, that appellant was entitled to judgment as a matter of law, as no case was made against it; second, that the jury was guilty

of misconduct, and third, the court improperly instructed the jury.

A newspaper account of the circumstances giving rise to this lawsuit was introduced in evidence and gives a fairly accurate statement of the unusual facts involved and is as follows:

"Auto mixup leaves mystery

"A comedy of car keys, errors and unpaid installments Saturday involved an innocent car purchaser, an investment company and the San Antonio police department.

"According to police reports, an agent of the Great Western Investment Co., 505 N. Presa St., on Jan. 9, called to reclaim a Chevrolet automobile on which payments were overdue.

"Keys surrendered

"The owner gave him the keys and said the vehicle was parked on the corner of Lexington Ave. and St. Mary's St.

"The agent drove off a Chevrolet car of the specified description and it was later sold to S. E. Scott, 1239 Westfall Ave. The keys fit.

"Meantime, L. R. Holloway, 419 Dallas St., reported to police that his Chevrolet had been stolen from the corner of Lexington Ave. and St. Mary's St. on Jan. 9.

"Saturday both Officer Sterling Edwards and Cpl. Guy Ligon of the police department spotted the car and collaborated in bringing the driver to the police station for questioning.

"Auto identified

"Investigation revealed the car Scott had 'purchased' and was driving belonged, in fact, to Holloway.

"No one knows what happened to the vehicle the investment company's agent was sent to reclaim."

Appellant contends that any cause of action Scott may have is founded in contract and not in tort; that damages such as an arrest by the municipal authorities and attendant results were not within the contemplation of the parties at the time the contract of sale was made between Scott and the company and hence cannot be recovered.

We are unable to agree with appellant's contention. It may be that a breach of contract or of warranty was involved, but an act may constitute both a breach of contract and a tort. It appears that the Chevrolet upon which appellant had a mortgage was a 1938 model. The car taken into custody by it and sold to Scott was a 1939 model. A jury could reasonably find that appellant and its agents were negligent in selling a car that it did not own. The admittedly unusual circumstance that the keys to the 1938 model sought to be reclaimed fit the 1939 model car actually taken into possession does not absolve the company of negligence as a matter of law. It also seems that an arrest of the purchaser would be the probable result of delivering a car actually belonging to a third party to a buyer with the implied assurance that he was obtaining good title to the car. The circumstances are admittedly unusual. The parties have cited no cases in point upon the facts, but the matter seems resolved by the application of well-recognized principles of tort law. We hold that the trial court did not err in failing to award appellant judgment as a matter of law. Montgomery Ward & Co. v. Sharrenbeck, 146 Tex. 153, 204 S.W.2d 508; Chicago, Rock Island & Gulf Ry. Co. v. Duncan, Tex.Civ.App., 273 S.W. 908.

We are, however, of the opinion that under authority of Burkett v. Slauson, Tex.Sup., 237 S.W.2d 253, and authorities therein cited, the trial court committed reversible error in overruling appellant's motion for new trial setting up jury misconduct.

Attached to the motion for new trial was an affidavit signed by Harry Shildt, one of the jurors. This instrument recited that H. R. Graham, foreman of the jury, stated during the course of the deliberations that he had been a victim of a holdup in which he had been pistol whipped and an associate killed, and that "he knew what this guy (meaning the plaintiff) had gone through because of what happened to him." The affidavit further stated that when the matter of damages came up another juror made the statement that in 1932 he was stopped by members of the

border patrol who were armed and that he was so frightened he had to stop at the next town because he was too nervous to continue his trip.

Shildt's testimony upon the hearing of the motion was in substantial agreement with his affidavit. From the testimony of other jurymen it appears that the jury were at one time in disagreement as to the amount of damages that should be awarded. Shildt was for a small amount of damages only, and said he had been in the army and been shot at and it didn't scare him very bad.

It was in evidence that the arresting officer had a gun and immediately upon apprehending Scott, he had handcuffed him with his hands behind his back. The jury arrived at a verdict of $2,500 after Shildt agreed to that amount after certain testimony was read back to the effect that the officer had made use of a gun in effecting the arrest.

The trial judge, according to the recitations appearing in the order overruling the motion for new trial, impliedly found that the instances mentioned in Shildt's affidavit took place, but that "the matters in question mentioned in the jury room were matters of common knowledge and no probable injury resulted to Defendant, Great Western Investment Company."

We are unable to agree with the trial court upon these holdings. It has been held that when recitations of personal experiences with automobiles are akin to those supposedly familiar to all men of reasonable intelligence, no prejudicial error is shown. Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 156 A.L.R. 1028; Blue Diamond Bus Co. v. Hale, Tex.Civ.App., 69 S.W.2d 228; Killen v. Stanford, Tex.Civ.App., 170 S.W.2d 792. Likewise, in Goode v. Ramey, Tex.Civ.App., 48 S.W.2d 719, 720, it was held that explanations of technical terms contained in building plans and specifications made by members of the jury who were builders did not constitute reversible error, as the statements made went no further than to explain to the jurymen the common understanding of such terms by builders and contractors and did not contravene the court's instructions. Other examples may be given. See Annotations, 156 A.L.R. 1033. It is said that if the matters be such that a court has judicial notice thereof as part of general knowledge, then jurors are presumed to have such knowledge. Baker v. Brown, Tex.Civ.App., 210 S.W. 312. However, it has been held reversible error for a juror to relate his personal sufferings as a result of a rupture while the jury was deliberating upon the amount of an award. St. Louis Southwestern Ry. Co. of Texas v. Robinson, Tex.Com.App., 285 S.W. 269, 46 A.L.R. 1507. (This case was decided in 1926, but contains the statement that probable injury was clearly shown.) For additional cases in which accounts of personal experiences of jurors as to pain and suffering have been held to constitute reversible error, see El Paso Electric Co. v. Cannon, 128 Tex. 613, 99 S.W.2d 907; Employers Casualty Co. v. Scheffler, Tex.Civ.App., 20 S.W.2d 833; Wald Transfer & Storage Co. v. Randolph, Tex.Civ.App., 56 S.W.2d 197.

In our opinion the facts of this case bring it within the line of cases last cited. It may be a matter of common knowledge that the ordinary person becomes frightened when threatened with a pistol. Similarly, it is a matter of common knowledge that one suffers pain when he undergoes a surgical operation, breaks a leg or strains his back. When, however, details are given as to the individual juror's injury or misadventure, and the consequent physical and emotional reactions, the field of common knowledge is abandoned and the result is the receiving of unsworn testimony contrary to the instructions of the court that the jurymen "must not obtain, receive, discuss, nor take into consideration any evidence not introduced and admitted in evidence upon the trial." Burkett v. Slauson, Tex.Sup., 237 S.W.2d 253.

■ We next consider the matter of "probable harm." A number of cases above cited were decided under the "reasonable doubt" rule of Moore v. Ivey, Tex.Com.App., 277 S.W. 106. The rule of "probable injury" was substituted therefor by the Texas Rules of Civil Procedure. Under Rule 327, the question of "probable

injury" is one of law to be determined from an examination of the "evidence both on the hearing of the motion and the trial of the case and from the record as a whole". Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, 464; City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259.

■■ The Supreme Court "has repeatedly held that the fact that jurors testified that their verdict was not affected by the statements made in the jury room is not binding, and may be disregarded in passing upon the question of probable injury. City of Houston v. Quinones, supra; Sproles Motor Freight Lines v. Long, 140 Tex. 494, 168 S.W.2d 642; Texas Milk Products Co. v. Birtcher, 138 Tex. 178, 157 S.W.2d 633; Republic Insurance Co. v. Hale, 128 Tex. 616, 99 S.W.2d 909; Barrington v. Duncan, 140 Tex. 510, 169 S.W. 2d 462." Burkett v. Slauson, Tex.Sup., 237 S.W.2d 253, 256. "It is never permissible to allow a juror to either to preserve or destroy his verdict by testifying to the mental processes by which he reached the same." Sproles Motor Freight Lines, Inc. v. Long, 140 Tex. 494, 168 S.W.2d 642, 644. The application of these two well-recognized and similar rules eliminates from consideration a portion of the testimony received upon the motion for new trial.

■■ The size of the verdict is a matter proper for consideration in determining the issue of probable injury. As indicated in the forepart of this opinion, recovery was primarily for emotional distress. There is no testimony as to special damages for loss of reputation resulting from the arrest. The newspaper account hereinabove set out was not damaging to appellee's reputation. He is pictured as the innocent victim of a mistake and not as a car thief. It appears, however, that in fixing the amount to be awarded by reason of emotional distress at least three jurors "testified" as to their personal experiences with the purpose of buttressing their respective arguments for and against a large award of damages. The juror Shildt stated that he wouldn't have been scared had he been in appellee's shoes on the occasion

in question, and related to the other twelve jurors his personal experiences to show why he wouldn't be scared. It was in the effort to reason with Juror Shildt that some of the jurors took the position that anyone would be frightened if a gun were pulled on him and he were arrested, and to bolster this argument the jurors Graham and Gravell related the holdup and border patrol incidents, respectively. In view of these circumstances and the substantial size of the verdict awarded, we hold that "probable injury" was shown, and the trial court erred in overruling the motion for new trial. Crawford v. Detering Co., Tex.Sup., 237 S.W.2d 615.

There was some evidence that Scott was not in good health at the time the arrest was made and appellant requested an instruction relating to prior infirmities in accordance with the rule set forth in Dallas Railway & Terminal Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683. Upon the present record and in view of the trial court's limitations upon the matters which could be considered in arriving at the amount of damages, we are of the opinion that it was not error to refuse the requested change. If, however, upon a retrial a broader basis of damages is suggested by the evidence and submitted by the court an instruction in accordance with the rule of the Ector case may be appropriate.

In our opinion the trial court did not err in refusing appellant's requested special charge relating to proximate cause. This matter was sufficiently covered in the main charge which was given to the jury.

There is evidence in the record which if credited by a jury would lead to the conclusion that excessive force was employed by the officer making the arrest. In view of this, we suggest that upon another trial, if the evidence be similar to that now before us, the jury be instructed that in estimating the damages, if any, they shall not take into consideration any damages, if any, occasioned by the use of excessive force by the arresting officer in making the arrest, if they should believe that excessive force was employed in making the arrest. Texas & New Orleans R. Co. v. Brannen, 140 Tex. 52, 166 S.W.2d

112; Phillips v. Citizens Nat. Bank, Tex. Com.App., 15 S.W.2d 550; 30 Tex.Jur. 750, Negligence, § 85.

For the error pointed out, the judgment is reversed and the cause remanded.

Reversed and remanded.

On Motion For Rehearing.

Appellee's motion for rehearing has been considered and is overruled.